587 A.2d 778

**James MANZI, Appellant**

v.

**H.K. PORTER COMPANY, Celotex Corporation.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1990.

Filed March 13, 1991.

Mitchell Cohen, Philadelphia, for appellant.

Vincent D. Duke, Philadelphia, for Porter, appellee.

Bruce H. Bikin, Philadelphia, for Celotex, appellee.

Before McEWEN, MONTEMURO and JOHNSON, JJ.

JOHNSON, Judge:

In this action for damages due to asbestos exposure, we are asked to decide whether it is proper for the court to have instructed the jury that, should they determine that the plaintiff's asbestos-related pleural thickening is not a compensable injury, then the plaintiff may bring a subsequent action if he develops a compensable asbestos-caused injury in the future. Finding this instruction to be consistent with the law of this Commonwealth, we affirm.

On February 23, 1982 appellant James Manzi brought suit against several manufacturers of asbestos. At the time this appeal was filed, H.K. Porter and Celotex were the only remaining defendants. Following a hearing in which Celotex did not oppose severance, this Court, by order of November 19, 1990 severed Celotex from this appeal in response to the automatic stay provisions of the Bankruptcy Code. In his complaint Manzi alleged that, as a result of his diagnosis for pleural and pulmonary asbestosis on November 17, 1981, he suffered anxiety, hysteria and fear that the condition would develop into cancer. He did not allege physical injury from disease. As compensation he asked for damages in excess of $15,000.00.

The trial court bifurcated the proceedings, trying the issues of medical causation and damages first. After the close of the evidence, the jury was provided with the following specific interrogatory: "Is the plaintiff's pleural thickening or pleural plaques an asbestos related condition or disease allowing him to receive compensation resulting from exposure to asbestos?" To explain this interrogatory, the court gave the following instruction:

Keep in mind, however, in determining whether or not you are going to award any sum of money under this category [damages for fear of and risk of cancer] that this is the plaintiff's only time to come into court; that is to say, if he should get cancer in the future, he can't come back. *However, if you should find that his pleur-*

*al thickening or pleural plaques are not compensable
by answering question one no, then if he gets cancer in
the future, he can come back.*

N.T., October 20, 1989 at 62–63 (emphasis supplied).

The jury answered "no" to the interrogatory. On January 4, 1990, in the order denying post-trial motions, the court included a proviso that, should Manzi develop an asbestos-related disease or condition other than the pleural thickening he already had, then "the jury's verdict ... shall not act as a bar against maintaining a subsequent action." Judgment was entered on January 17, 1990. This timely appeal follows.

■ On appeal Manzi argues that the one-disease-one-injury rule triggers the running of the statute of limitations upon discovery of any condition, whether compensable or not, caused by a tortious act, and that the rule coordinately precludes a subsequent action for damages from a different disease caused by the same tortious act. Therefore, he argues, the above-highlighted portion of the jury instruction is contrary to Pennsylvania law. After careful review of the authority relied upon by Manzi, we conclude that, to the contrary, it is not the law in Pennsylvania that any condition caused by tortious conduct, whether compensable or not, is an injury as a matter of law precluding subsequent action, should a jury find no compensable damage. Whether a condition such as pleural thickening is an injury entitling the plaintiff to damages is a factual question for the jury. What follows is an analysis of the relevant cases.

The one-disease-one-injury rule evolved from the "discovery" principle first articulated in *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959). In *Ayers*, a surgeon left a sponge in the patient-plaintiff, who did not discover the negligent act until he became ill as a result nine years later. The two-year statute of limitations for a personal injury action requires that the suit be brought within two years from the time when the "injury was done." Interpreting this language, the court held that the statute is triggered

when the injury is discovered, not when the causative act took place:

> The *injury* is done when the act heralding a possible tort inflicts a *damage* which is physically objective and ascertainable.

*Ayers v. Morgan,* 397 Pa. at 290, 154 A.2d at 792 (emphasis supplied).

The court's rationale was that "one may not be charged with dreaming away his right to recover if even the most watchful vigilance could not apprise him of the damage being done him." *Ayers v. Morgan,* 397 Pa. at 291, 154 A.2d at 793. Fairness was the court's underlying concern. *See Prince v. Trustees of the University of Pennsylvania,* 282 F.Supp. 832, 840 (E.D.Pa.1968). It was assumed in *Ayers* that once a condition becomes ascertainable, there are damages. The issue of whether there was an injury was not in the case; the definition of "injury" was not at issue. The court pointed out that "this is not a case where the act of negligence was known to the plaintiff but the extent of the damages which ensued therefrom was not ascertained until after the expiration of the statute of limitations." *Ayers,* 397 Pa. at 290, 154 A.2d at 792. Once any *damages* are known, the statute begins to run; nothing in the opinion suggests that any *condition* caused by the tort, whether or not there are damages, starts the statutory period.

In *Shandle v. Pearce,* 287 Pa.Super. 436, 440, 430 A.2d 683, 685 (1981), we modified the *Ayers* rule to reach a fair result, this time in fairness to the defendant. In *Shandle,* treatment by a dentist for an abscessed tooth occurred in 1972, which caused bacterial endocarditis resulting in an aortic valve transplant in 1973, but the injury for which the patient sought recovery was for an aortic aneurysm occurring in 1976. We held that the action was barred by the statute of limitations:

> If we were to hold otherwise under the facts presented here, we would create a concept in the law which would permit an injured plaintiff to have a new limitations

period commence for the initiation of an action for personal injuries as of the date when each complication or change in condition arose, despite the fact that no "new" negligence has occurred which is attributable to the defendant. Such a concept would be contrary to the legislative intent inherent in the creation of periods of limitations in our law.

*Shandle v. Pearce,* 287 Pa.Super. at 441, 430 A.2d at 685–686 (emphasis added). In *Shandle* there was no dispute that the plaintiff had a compensable injury in 1973 when he underwent the valve transplant. Again, as in *Ayers,* the definition of injury was not at issue. Taken together, *Ayers* and *Shandle* established a common-sense rule based upon the fact that certain injuries do not conveniently manifest themselves within the statutory period. At the same time, a plaintiff, once aware that damage has been sustained, may not renew an attack upon the defendant at each stage of a progressing illness.

In cases concerning asbestos-induced conditions, a significant factor contemplated by neither the *Ayers* nor the *Shandle* courts comes into play—the "physically objective and ascertainable condition" may not yet be a disease-causing compensable injury at the time it is discovered. Asbestos-related pleural thickening is the formation of calcified tissue on the membranes surrounding the lungs. *Doe v. Johns–Manville Corp.,* 324 Pa.Super. 469, 472, 471 A.2d 1252, 1253 (1984). As in the present case, pleural thickening can be present and not cause ill health. Consequently, it has never been defined as a compensable injury as a matter of law in Pennsylvania. *Howell v. Celotex et al.,* 904 F.2d 3 (3rd Cir.1990). In *Howell,* the Court of Appeals for the Third Circuit, applying Pennsylvania law, concluded that, in the face of medical disagreement, whether pleural thickening is a compensable injury in any given case is a factual question. *Howell v. Celotex,* 904 F.2d at 5. This is the precise factual question that was before the jury in the present case.

*Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984) applied the *Ayers/Shandle* discovery rule to the asbestos "creeping disease" situation. The plaintiff was permanently disabled more than two years before he filed his complaint. Thus, there was no factual question of whether he sustained compensable injury. Rather, he argued that the limitations period should have begun to run only after he discovered which asbestos manufacturers were responsible. We held that difficulty in ascertaining the identity of the defendants should not be the statute-triggering event, that the statute begins to run in creeping disease cases when the plaintiff knows, or reasonably should know: (1) that he has been *injured,* and (2) that his injury has been caused by another party's conduct. *Cathcart,* 324 Pa.Super. at 136–137, 471 A.2d at 500 (emphasis supplied). Significantly, we recognized that there may be an issue regarding the definition of "injury," and that "injury" had not been defined by the courts. We expressly declined to address this issue and to provide the definition, as the question was not before us. *Cathcart,* 324 Pa.Super. at 136–137 n. 10, 471 A.2d at 500 n. 10.

In *Doe v. Johns–Manville Corp.,* 324 Pa.Super. 469, 472, 471 A.2d 1252, 1253 (1984) (en banc), the plaintiff filed his action after he developed pleural thickening, as in the present case. We were asked to decide whether the trial court properly denied a pre-trial motion for a declaratory judgment that the statute of limitations would not begin to run until the plaintiff actually became disabled. The plaintiff did *not* ask the court to declare that his pleural thickening was or was not an injury, or to declare that it alone did or did not trigger the statute of limitations. He wanted the court to declare that nothing short of disability would trigger the statute. Therefore, even though the plaintiff's condition was pleural thickening, we were not being asked to render a decision on the legal significance of this condition.

We affirmed the trial court's refusal to grant the declaratory judgment, holding that a declaratory judgment may

only illuminate existing legal rights and may not be used to modify or elucidate judicial decisions. *Doe v. Johns–Manville,* 324 Pa.Super. at 475, 471 A.2d at 1255. We determined that, under *Ayers,* any ascertainable *injury* triggers the statute. In this pre-trial stage, the trial court could not have known whether a jury would find that the *Doe* plaintiff had suffered compensable injury and so it would have been contrary to law for him to have declared that only a future stage of illness such as disability would constitute a compensable injury. The *Doe* court was not asked to render a decision on the definition of injury. Rather, it was asked to rule upon the propriety of a denial of a declaratory judgment that would have been impossible to render correctly without a factual determination of whether the plaintiff had suffered compensable injury. *See Howell v. Celotex, supra.* Thus, *Doe* cannot be read to mean that pleural thickening is a per se statute-triggering compensable injury.

Recently, in *Giovanetti v. Johns–Manville Corp.,* 372 Pa.Super. 431, 539 A.2d 871 (1988), the issue before us was whether an asbestos plaintiff was prejudiced by application of New Jersey law to his case. He argued that he was denied the chance to be awarded damages for increased risk of cancer, which Pennsylvania permits. The jury had found that he sustained injuries as a result of exposure to asbestos but that the defendants were not liable for his injuries. We held that the "claim must fail for the simple reason that the application of New Jersey law to the facts of the case put him in no worse a position than he would have been in" under Pennsylvania law. *Giovanetti,* 372 Pa.Super. at 437, 539 A.2d at 871. The variants between the law of the two states on the subject of damages could have no bearing on the finding that the defendants were not liable.

In dicta we discussed the variants between Pennsylvania and New Jersey law, noting that New Jersey has expressly recognized pleural thickening (asbestosis) and cancer as separate and distinct injuries giving rise to separate causes of action which each accrue only when the particular injury is discovered. *See Herber v. Johns–Manville Corp.,* 785

F.2d 79, 82 (3rd Cir.1986). We compared Pennsylvania law by relying upon *Cathcart* for the proposition that Pennsylvania did not create these distinct causes of action. This may be true, but it is irrelevant to Manzi's point. The comparison does clarify the point that Manzi claims it does, the legal effect of the distinction between "injury" and "non-compensable condition," a distinction that the *Cathcart* court expressly declined to address.

We conclude that no appellate court in this Commonwealth has treated a non-compensable condition as an injury precluding subsequent actions by the plaintiff, should he develop injury in the future. Hence, the jury instruction that Manzi could come back into court should the jury find no compensable injury is a correct statement of the law. We recognize that the point at issue in this case has caused confusion and that trial courts have criticized an application of the above cases to preclude future actions. *See especially Doe v. Johns–Manville*, 324 Pa.Super. at 476–478, 471 A.2d at 1255–1256, quoting trial courts. We do not view our decision here as a change in the law but rather as a clarification.

Order affirmed.

McEWEN, J., files a dissenting opinion.

McEWEN, Judge, dissenting:

The members of the majority enjoy such esteem by reason of their judicial scholarship that it is with apology that I differ with the splendid expression of the majority view. Moreover, I only proceed to so extended a dissent because this case touches upon issues which compose the most perplexing questions currently confronting the civil courts of this Commonwealth. The question presented by this appeal, however, is quite basic, namely, whether the trial court erred in its charge to the jury. Since I am convinced that the charge was error and that, contrary to the arguments of appellee, the error was not harmless, I must, respectfully, dissent.

Appellant commenced this action on February 23, 1982, seeking (1) compensation for bilateral pleural thickening and pleural plaques caused by exposure to asbestos, (2) compensation for his increased risk of contracting lung cancer; or mesothelioma in the future, (3) compensation for the emotional distress he has experienced and will continue to experience as a result of his fear of the cancer he may ultimately develop, and (4) compensation for the cost of the medical surveillance necessitated by his exposure to asbestos. Appellant conceded at trial that he was not presently suffering any physical disability as a result of the presence of pleural plaques and pleural thickening, but sought compensation for his increased risk of developing cancer as well as compensation for the suffering caused by his anxiety and fear of cancer. *See: Walsh v. Brody*, 220 Pa.Super. 293, 296, 286 A.2d 666, 668 (1971).

It is well settled that Pennsylvania law permits an award of damages for both (1) the increased risk of cancer, *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 437, 539 A.2d 871, 874 (1988); *Doe v. Johns–Manville Corp.* 324 Pa.Super. 469, 473, 471 A.2d 1252, 1254 (1984); and (2) the emotional distress caused by the fear of contracting cancer, so long as the plaintiff "is able to allege some physical injury *or* some medically-identifiable effect linked to [his or] her exposure to asbestos particles. . . ." *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 153, 471 A.2d 493, 509 (1984) (emphasis supplied). *Accord: Berardi v. Johns–Manville Corp.*, 334 Pa.Super. 36, 45 n. 3, 482 A.2d 1067, 1072 n. 3 (1984); *Restatement (Second) of Torts* § 436(a). The physical impact in the instant case, the existence of which enabled appellant to sue for emotional distress caused by his fear of cancer, was the pleural thickening and pleural plaques, medically-identifiable effects, which had been caused by his exposure to asbestos. The physical impact required to sustain a cause of action for negligent infliction of emotional harm need not be such that it causes "compensable bodily harm" other than the emotional distress. *See, e.g., Potere v. City of Philadel-*

*phia,* 380 Pa. 581, 588, 112 A.2d 100, 104 (1955); *Stoddard v. Davidson,* 355 Pa.Super. 262, 266, 513 A.2d 419, 422 (1986); *Zelinsky v. Chimics,* 196 Pa.Super. 312, 175 A.2d 351 (1961); *Plummer v. U.S.,* 580 F.2d 72, 76 (3rd Cir.1978). Thus, appellant was entitled to recover damages for his emotional distress caused by his fear of cancer if the jury accepted his evidence.[1] *See, e.g., Martin v. Johns–Manville Corp,* 508 Pa. 154, 162, 494 A.2d 1088, 1093 (1985) (collecting cases).

The trial court, however, over objection by appellant, submitted the following special interrogatory to the jury:

"Is the plaintiff's pleural thickening or pleural plaques an asbestos related condition or disease allowing him to receive compensation resulting from exposure to asbestos?"[2]

The court, in explanation of the interrogatory, then instructed the jury, in the absence of *any* appellate case law which would support such a charge, that:

Keep in mind, however, in determining whether or not you are going to award any sum of money under this category [damages for fear of and risk of cancer] that this is the plaintiff's only time to come into court; that is to say, if he should get cancer in the future, he can't come back. However, if you should find that his pleural thickening or pleural plaques are not compensable by

---

1. "Asbestos-related pleural thickening is defined as a scar tissue 'condition' forming on the lungs as a result of asbestos contact." *Doe v. Johns–Manville,* 324 Pa.Super. 469, 471, 471 A.2d 1252, 1253 (1974). Although pleural thickening itself "causes no physical damage, its presence signifies increased risk of harm, and the possibility of other latent asbestos-related injury." *Howell v. Celotex Corp.,* 904 F.2d 3, 4 (3rd Cir.1990). *Cf. Berardi v. Johns–Manville Corp., supra,* 334 Pa.Super. at 40, 482 A.2d at 1069. (" 'X-rays' indicated pleural thickening and plaques and the diagnosis was 'probable asbestosis'.")

2. This interrogatory, drafted by appellee, blurs the pertinent issues since it could be understood to be asking whether the pleural thickening or pleural plaques was/were caused by asbestos exposure rather than by some other agent or factor. It appears from the court's charge, however, that the interrogatory was directed to whether or not the "condition or disease" was "compensable".

answering question one no, then if he gets cancer in the future, he can come back.

N.T., October 20, 1989 at 62–63.

The jurors in the instant case were instructed that if they found that appellant's bilateral pleural thickening and pleural plaques alone did not warrant an award of compensatory damages, they could cease deliberating and return a verdict for the defendants, *preserving* appellant's right to sue for damages for cancer, if and when he develops that disease. The instruction thus improperly precluded the jury from proceeding to a determination of each of the items which had been properly submitted to it. This was error.

The trial court undertook a painstaking effort to clarify for the jury a most difficult area of deliberation. Nonetheless, the court, while purporting to instruct the jury on the items of damage[3] to which appellant *would* be entitled

3. The court's charge on damages provided:
"Let's proceed to the damage issue and, again, you would only reach the damage issue if you found that Mr. Manzi's pleural thickening or pleural plaques are compensable. If you say no to that issue, then you wouldn't reach the damage question.

Now, if you reach the damage question, then you should consider these factors in determining whether or not you are going to award damages to Mr. Manzi. You can consider each one and then determine whether it's worth anything or not, and if it is worth something, how much it is. First of all, the plaintiff would be entitled to fair and reasonable compensation for fair and reasonable medical bills for future checkups. What that amount would be and how long he would be entitled to the future checkups, that's up to you to decide.

Now, the plaintiff is also entitled to fair and reasonable compensation for what we call pain and suffering, and that would be as follows. The plaintiff, if you find, if you reach the damage issue, then you should consider whether to award the plaintiff compensation for pain and suffering, and the plaintiff would be entitled to fair and reasonable compensation both in the past, present and in the future for mental anguish, discomfort, inconvenience and distress.

In addition, the plaintiff would be entitled to fair and reasonable compensation for the loss, if any, of the ability to enjoy the pleasures of life.

If you reach the damage issue, you should consider the fear of cancer, and the plaintiff would be entitled to fair and reasonable compensation for a reasonable fear of cancer arising from his exposure to asbestos.

In addition, you should consider, and it's up to you as to whether you would award anything or not, but you should consider in the

if the jury accepted the evidence presented on his behalf, incorrectly instructed the jury *not* to consider an award for such items as the cost of future medical surveillance, or damages for emotional distress related to the fear of developing cancer or the increased risk of cancer, if they found that appellant's pleural thickening and pleural plaques had not resulted in any "compensable" physical injury. This was clearly error and infringed upon appellant's right to seek compensation for his injuries. That the trial court believed that a future action could be brought if appellant develops cancer does not mitigate the harm caused to appellant by the error in the charge.

> The primary duty of a trial judge in charging a jury is to clarify the issues so that the jury may comprehend the questions they are to decide.... If the charge is wholly inadequate or not clear, or has a tendency to mislead and confuse rather than to clarify the issues, a new trial will be granted. The functions of a trial judge embrace not only the duty to state to the jury correct principles of law applicable to the pending case and to endeavor to make such principles understandable in plain language, but they also impose upon the judge the duty to assist the jury in applying those principles to the issues presented to them for determination.

*Bressler v. Dannon Yogurt*, 392 Pa.Super. 475, 484, 573 A.2d 562, 567 (1990) (en banc), *quoting Spearing v. Starcher*, 367 Pa.Super. 22, 29, 532 A.2d 36, 40 (1987) (citations omitted).

Nor is the error harmless as argued by appellee. While appellee allegedly agreed not to raise the defense of the

damage area the increased risk of cancer arising from the plaintiff's exposure to asbestos. The plaintiff would be entitled to a fair and reasonable compensation for any reasonable statistical increase in the risk of cancer as a result of his asbestos exposure.

Keep in mind, however, in determining whether or not you are going to award any sum of money under this category that this is the plaintiff's only time to come into court; that is to say, if he should get cancer in the future, he can't come back. However, if you should find that his pleural thickening or pleural plaques are not compensable by answering question one no, then if he gets cancer in the future, he can come back."

statute of limitations[4] if a subsequent action based upon the development of *cancer* is brought by appellant, the error in the instant case has wrongfully deprived appellant of the opportunity to have a jury determine whether he is presently entitled to be compensated for damages occasioned by his exposure to asbestos.

While the foregoing presents, in my view, ample grounds upon which to reverse and remand for a new trial of the claims of appellant, I am of the further view that the instruction was a fundamental misstatement of the law of Pennsylvania. Moreover, while the majority opinion commendably seeks to clarify the complex issues arising from the existing law, the majority, in my most respectful view, creates new law and thereby synergizes a myriad of problems in an area of the law already in crisis.

If we accept the proposition that where a jury finds that an alleged injury is not compensable and refuses to award damages, no cause of action has accrued, and that, as a result, the trial will not serve as a bar to future litigation, numerous problems arise, not the least of which are the statute of limitations and the prohibition against splitting causes of action. While compelling arguments exist for the adoption of the two disease rule, Pennsylvania has not yet accepted it. "[I]n Pennsylvania a plaintiff's claims for *all* injuries arising out of the same tortious conduct of a defendant must be brought within two years of the time that the plaintiff knows, or in the exercise of reasonable diligence should know, of his *initial* injury and that the injury was caused by someone's wrongful conduct." *Cathcart v. Keene, supra,* 324 Pa.Superior Ct. at 150, 471 A.2d at 507 (emphasis supplied).

This Court in *Doe v. Johns–Manville Corp., supra,* held that because the Declaratory Judgment Act could *not* be used as "a vehicle for *changing the law* ..." the trial court

---

**4.** While appellee in its brief states that it "has agreed not to raise the statute in the event Manzi, in fact, files a subsequent action for asbestos-related cancer", citing page 43(b) of the reproduced record, no such agreement appears in the reproduced record submitted to this court.

had properly refused to rule that no cause of action accrues, and thus the statute of limitations does not begin to run, *until* a plaintiff becomes "disabled". The *Doe* Court believed the reason for its ruling, affirming the trial court, to be "clear":

> Pennsylvania law as it applies to plaintiff's claim is *clear.* The seminal case was decided in 1959 when our Supreme Court in *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) held:
>
>> [t]he injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable.
>
> *Ayers v. Morgan, supra,* 397 Pa. at 290, 154 A.2d at 792. Appellant concedes that in April of 1980 he was advised that he had a pleural thickening ('damage which is physically objective') and that it could be identified by chest x-ray ('and ascertainable'). Thus, *without more,* any attempt to delay the operation of the statute of limitations *would involve* a change in the law

*Doe v. Johns–Manville Corp., supra,* 324 Pa.Superior Ct. at 473, 471 A.2d at 1254 (emphasis supplied).

It is, with undiminished deference, that I fail to comprehend the reasoning by which the majority characterizes the opinion in *Doe* as inapplicable to the instant case where the injuries claimed by appellant Manzi were pleural thickening and pleural plaques. The majority finds the opinion in *Doe* inapplicable based upon its characterization that:

> The *Doe* Court was not asked to render a decision on all definitions of injury. Rather, it was asked to rule upon the propriety of a denial of a declaratory judgment that would have been impossible to render correctly without a factual determination of whether the plaintiff had suffered compensable injury. See: *Howell v. Celotex, supra.* Thus, *Doe* cannot be read to mean that thickening is a per se statute triggering compensable injury.

Majority Op. at p. 601.

I would submit that the *Doe* opinion simply "cannot be read to mean" anything other than that pleural thickening,

of which a plaintiff has knowledge, *"is* a per se statute-triggering ... injury." *See: Howell v. Celotex Corporation, supra,* 904 F.2d at 5. *See also: Cowgill v. Raymark Industries, Inc.,* 832 F.2d 798, 802 (3rd Cir.1987). The question of whether pleural thickening is "compensable" is simply (and unfortunately for plaintiffs such as Howell) not relevant to the inquiry concerning the triggering event for purposes of the statute of limitations. *See: Staiano v. Johns–Manville Corp.,* 304 Pa.Super. 280, 450 A.2d 681 (1982) ("Similarly, we do not read the complaint as alleging a claim for a 'different disease of pleural thickening.' But if we assume that the complaint should be read as alleging such a claim, the claim is nevertheless barred, for a new limitation period does not start each time a new disease develops from the same tortious conduct of the defendant.")

The trial court in the instant case included in its order dismissing post-verdict motions, the following:

In the event that Plaintiff shall suffer from a *disease or a condition* other than pleural thickening, which is asbestos related, the jury's verdict in this case shall not act as a bar against maintaining a subsequent action.

While appellee asserts that the order is meant to preclude the statute of limitations being raised as a defense if plaintiff develops cancer, it is equally plausible that the order was meant to avoid the prohibition against splitting causes of action.[5] However well intentioned, the attempt of the trial court to provide a more certain justice than is currently available to individuals in the circumstances of the

5. " 'It is a well-settled and familiar rule that a single claim, arising either in contract or in tort, cannot be divided and made the subject of several suits; and if actions are brought for different parts of a single demand, a judgment on the merits in one is available as a bar to the other'.... The purpose of the rule is worthy. It is intended to protect persons from being twice vexed with suits growing out of a single cause of action. It also serves to prevent the business of the courts from being encumbered by multiple actions when one will suffice." *Franklin Decorators Inc. v. Kalson,* 330 Pa.Super. 140, 142, 479 A.2d 3, 4 (1984), *quoting Saber v. Supplee–Wills–Jones Milk Co.,* 181 Pa.Super. 167, 168, 124 A.2d 620, 621 (1956) (citations omitted). *See also: Giovanetti v. Johns–Manville, supra* 372 Pa.Super. at 437, 539 A.2d at 874.

appellant, falls short of the goal.[6]   While cases and articles describing the procedures utilized in other jurisdictions provide potential solutions, *see, e.g. Eagle–Picher Industries Inc. v. Cox*, 481 So.2d 517 (Fla.App. 3rd Dist.1985), *cert. denied*, 492 So.2d 1331 (1986); *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020 (1983), selection of the procedure to be employed in this Commonwealth is the precise role of the Supreme Court or the legislature.

**6.**  The trial judges of our Commonwealth who constantly grapple with the difficulties attendant the asbestos litigation currently congesting their courts have eloquently appealed for major reform in this area. *See: Blue v. Johns–Manville*, 10 P.C.R. 23 (1983); *Faix v. Johns–Manville Corp.*, 9 P.C.R. 341 (1983); *In Re Asbestos Litigation*, No. 89–90000–12, Civil Div., Bucks County; filed July 6, 1990.