## Davis v. Newcomer

*Peter J. Curry,* for plaintiff.
*Daniel H. Shertzer,* for defendant.

FARINA, *J.,* April 14, 1993—Before the court is defendant David L. Newcomer, M.D.'s motion for judgment on the pleadings.

Defendant asserts that plaintiff Michael Davis' medical negligence action accrued in 1980 and is time barred by the applicable two-year statute of limitations found at 42 Pa.C.S. §5524 (Purdon's 1981 and Supp. 1992). He also contends that 42 Pa.C.S. §5533 (Purdon's 1981 and Supp. 1992), enacted in 1984 and modifying the statute in the case of unemancipated minors to toll the statute until the minor reaches majority, does not apply retroactively to revive a claim filed by a minor upon reaching majority where the claim has been barred under the previous statute of limitations.

Following oral argument on the motion, the parties submitted supplemental briefs on the additional issue of whether plaintiff's cause of action accrued before or after it was established that plaintiff had actually suffered a compensable injury of sterility. For the reasons that follow, we find plaintiff's action time barred and grant defendant's motion for judgment on the pleadings.

A motion for judgment on the pleadings is properly granted where an examination of the pleadings alone shows that there are no issues of material fact and the case is clear. *Milk Marketing Board v. Ohio Casualty Insurance Co.,* 25 Pa. Commw. 371, 360 A.2d 788 (1976). It is analogous to a preliminary objection in the nature of a demurrer. *Weiner v. Armstrong Cork Co.,* 7 D.&C.3d 470 (Lawrence 1978). Considering only

the pleadings and documents properly attached thereto, the court views as true the allegations of the non-movant, drawing all inferences and assuming all the concessions which would apply in ruling on a *demurrer. Pennsylvania Gas & Water Co. v. Kassab,* 14 Pa. Commw. 564, 322 A.2d 775 (1974).

So viewing the pleadings the following facts emerge. On June 10, 1980, plaintiff Michael Davis, then 9 years old, underwent a hernia repair operation by the defendant physician. During the operation, Michael's left vas deferens was severed. The parents were immediately advised by defendant of the injury and the possible consequence of sterility. This 1980 event has given rise to two separate actions. The first was filed as a writ of summons on June 21, 1982 by Michael's parents on his behalf against the defendant in the Court of Common Pleas of Lancaster County docketed to no. 207-1982. The parents took no further action and pursuant to Pa.R.J.A. §1901 and in accordance with Local Rule 350, the action was automatically terminated for inactivity by order of this court on October 9, 1985.

Michael's parents filed a motion to reinstate the action on February 13, 1990. The decision was affirmed on reconsideration, and following plaintiffs' appeal to the Superior Court, the trial court's decision was affirmed. *Davis v. Newcomer,* 72 Lanc. L. Rev. 307 (1990), *affirmed,* Pa. Super. Docket no. 3311-1990 (Aug. 5, 1991). Plaintiffs did not appeal the Superior Court's decision.

Upon reaching the age of majority Michael Davis then filed the instant second suit on his own behalf in September of 1990. Plaintiff contends that when his parents filed suit in 1982, he had no compensable injury and thus no cause of action, and that therefore this second suit is not barred by anything that happened in the prior action. Plaintiff claims his case is analogous

to a "creeping disease" action, where one is exposed to some act or element with the potential to cause harm, and there is as a consequence a change in one's condition, but not a change for which damages can be awarded. Thus, he contends that his cause of action did not arise until his infertility was established in 1986, and therefore the applicable statute of limitations is the amended statute 42 Pa.C.S. §5533, enacted in 1984. As amended, the statute of limitations is tolled until plaintiff reaches the age of majority, which occurred here in 1989. Thus, plaintiff concludes that the instant complaint filed in 1990 is timely. We disagree.

Plaintiff's action is barred by the two year statute of limitations found at 42 Pa.C.S. §5524,[1] which requires that a suit to recover damages be commenced within two years of the time the cause of action accrued. The statute in effect at the time the cause of action arises and the case is filed applies. *Doner v. Jowitt and Rodgers Co.,* 299 Pa. Super. 492, 445 A.2d 1237 (1982). At the time plaintiff's cause of action arose in 1980, the applicable statute of limitation was two years, pursuant to 42 Pa.C.S. §5524. Plaintiff and his parents were clearly aware of this, as they filed suit within three weeks of the time that the action would have become time barred.

Plaintiffs' initial action was dismissed for failure to prosecute the claim pursuant to Rule 1901 and Local Rule 350. This is significant because the dismissal is

---

1. 42 Pa.C.S. §5524 reads in pertinent part:

"Section 5524. Two Year Limitation.

"The following actions and proceedings must be commenced within two years:

"(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another."

final. Although such a dismissal is similar to a case being dismissed pursuant to a voluntary nonsuit or a judgment of non pros, the result and procedure for bringing a subsequent action are different. In *Dept. of Public Welfare v. Flowers,* 46 Pa. Commw. 326, 407 A.2d 896 (1979), the Commonwealth Court addressed this issue, stating as follows:

"The issue before us in the present case is whether or not a final order of this court refusing to reactivate a case terminated under Rule 1901 of the Rules of Judicial Administration, as implemented by our Rule 650, terminates both the case *and* its underlying cause of action. We determine that it does.

"In this respect, we find that Rule 1901 compels a result different from that which obtains after a court order refusing to take off a voluntary nonsuit, or remove a judgment of non pros, becomes final. In these latter situations, a final and unappealed court order does not destroy the underlying cause of action, and the plaintiff, if within the statute of limitations, can commence and prosecute a new proceeding upon the same cause of action." (citations omitted) (emphasis in original) *Id.* at 328-329, 407 A.2d at 897-98.

Clearly plaintiff did not have the option of filing a second action under a new term and number after the statute of limitations had run, but was required to petition the court to take off the non pros or have permission to bring a subsequent action. Plaintiff's parents did so in the prior action when they petitioned the court to remove the non pros for inactivity entered in 1985. We denied the petition due to unexcused inactivity. The denial was appealed to and affirmed by the Superior Court. Plaintiff's current action on his own behalf amounts to a collateral attack on the decision refusing to reinstate the initial action. This appears to

be an attempt to make an end run around Rule 1901, which we cannot allow.

Moreover, at the time plaintiff's cause of action arose, there was no tolling exception to the statute during minority in 42 Pa.C.S. §5533 as it existed in 1980.[2] When the prior action brought on plaintiff's behalf was dismissed in 1985 and his parents were not successful in petitioning for reinstatement of that action, his claim terminated at least as early as July of 1982, two years subsequent to when his cause of action arose and two years before the effective date of the amended statute. It is well settled that once a right to sue has expired, no subsequent legislation can revive it. *Williams Studio Division of Photography by Tallas, Inc. v. Nationwide Mutual Fire Insurance Co.,* 380 Pa. Super. 1, 550 A.2d 1333 (1988), *appeal denied,* 527 Pa. 588, 588 A.2d 510 (1990); *Redenz by Redenz v. Rosenberg,* 360 Pa. Super. 430, 520 A.2d 883 (1987), *appeal denied,* 516 Pa. 635, 533 A.2d 93 (1987); *Lewis v. City of Philadelphia,* 360 Pa. Super. 412, 520 A.2d 874 (1987); *Clark v. Jeter,* 358 Pa. Super. 550, 518 A.2d 276 (1986), *rev'd on other grounds,* 486 U.S. 456 (1988).

The only time a statute of limitations is permitted to apply to cases which existed before its enactment is where the statute of limitations applicable to those actions had not yet expired when the new statute of limitations became effective. *Upper Montgomery Joint Authority v. Yerk,* 1 Pa. Commw. 269, 274 A.2d 212 (1971). This did not occur in the instant case. Although plaintiff filed an initial action prior to the running of

---

2. 42 Pa.C.S. §5533 reads as follows:

"Section 5533. Infancy, Insanity or Imprisonment.

"Except as otherwise provided by statute, infancy, insanity or imprisonment does not extend the time limited by this subchapter for the commencement of a matter."

the statute of limitations, that did not have the effect of tolling the statute of limitations so as to allow him to bring a subsequent action in 1990 after the initial action had been dismissed for inactivity. Accordingly, we find that the two-year statute of limitations in effect at the time the plaintiff's cause of action arose in 1980 had expired at the time the case was dismissed for inactivity in 1985. Therefore the instant action, filed eight years after the first, is also time barred.

Plaintiff nevertheless urges us to apply the two disease rule of *Manzi v. H.K. Porter Co.*, 402 Pa. Super. 595, 587 A.2d 778 (1991), *appeal denied, Manzi v. Celotex Corp.*, 531 Pa. 661, 613 A.2d 1210 (1992), to the instant case in order to find that plaintiff's cause of action did not arise until he was determined to be sterile in 1986. Accordingly, the applicable statute of limitations would then be the amended statute, enacted in 1984 and thus in effect when plaintiff's cause of action arose. The statute would then be tolled until plaintiff reached majority in 1989, and therefore plaintiff's complaint filed on his own behalf in 1990 would be timely. For the reasons that follow, we decline to extend the *Manzi* rationale to the instant case.

The general rule for personal injury actions is that the cause of action for all present and future damages arises at the time of the original negligent act. See *e.g., Ragen v. Steen,* 229 Pa. Super. 515, 331 A.2d 724 (1974) (two-year period of limitation on medical malpractice actions begins to run when injury is done); *Moore v. McComsey,* 313 Pa. Super. 264, 459 A.2d 841 (1983) (general rule is that statute of limitations for actions alleging negligence of another caused personal injury begins to run from time negligence is done). However, there are exceptions. The Pennsylvania Supreme Court adopted the discovery rule in *Ayers v.*

*Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). That case involved a surgeon who left a surgical sponge in a patient who did not discover it until nine years later as the result of complications. The court held that the statute of limitations is triggered when the injury is discovered, not when the causative act took place. In contrast to the instant case, however, *Ayers* did not involve a situation where the act of negligence was known to the plaintiff, and the resulting damages therein were not with certainty ascertained until after the expiration of the statute of limitations.

The discovery rule of *Ayers* was modified in *Shadle v. Pearce,* 287 Pa. Super. 436, 430 A.2d 683 (1981). In *Shadle* a dentist improperly treated plaintiff's abscessed tooth in 1972, causing bacterial endocarditis and resulting in an aortic valve transplant in 1973. Plaintiff decided not to institute an action against the physician at that time. Subsequently, in 1976 plaintiff sustained an aortic aneurysm, also related to the malpractice of the dentist in 1972. The court held that the action was barred by the statute of limitations, stating that:

"If we were to hold otherwise under the facts presented here, we would create a concept in the law which would permit an injured plaintiff to have a new limitations period commence for the initiation of an action for personal injuries as of the date when each complication or change in condition arose, despite the fact that no 'new' negligence has occurred which is attributable to the defendant. Such a concept would be contrary to the legislative intent inherent in the creation of periods of limitations in our law." *Shadle, supra* at 441, 430 A.2d at 685.

Subsequently, the court in *Manzi, supra* addressed the issue of whether a noncompensable injury arising from tortious conduct would bar plaintiff from filing

a future action for a compensable injury caused by the same conduct. The plaintiff in *Manzi* brought suit against several manufacturers of asbestos, alleging that as a result of his diagnosis of pleural thickening,[3] he suffered anxiety, hysteria and fear of developing cancer. The trial court instructed the jury that, if they should determine that the plaintiff's pleural thickening was not a compensable injury, plaintiff could then bring a subsequent action if he developed a compensable asbestos-caused injury in the future. The jury found that pleural thickening was not compensable. On appeal plaintiff argued that the one-disease-one-injury rule triggers the running of the statute of limitations upon discovery of any condition, whether compensable or not, caused by a tortious act, and that the rule precludes a subsequent action for damages from a different disease caused by the same tortious act. Therefore plaintiff said the jury instruction was inconsistent with Pennsylvania law.

The *Manzi* court disagreed, finding that to the contrary, it is not the law in Pennsylvania that any condition caused by tortious conduct, whether compensable or not, is an injury as a matter of law precluding subsequent action should a jury find no compensable damage. Based upon its analysis of *Ayers* and *Shadle*, the *Manzi* court stated:

"Taken together, *Ayers* and *Shandle* [sic] established a common-sense rule based upon the fact that certain

---

3. Pleural thickening is a thickening in the lining of the lung caused by exposure to asbestos. It can be present and not cause ill health. It has never been defined as a compensable injury as a matter of law in Pennsylvania. *Howell v. Celotex Corp.,* 904 F.2d 3 (3d Cir. 1990). Due to medical disagreement, whether pleural thickening is compensable in any given case is a fact question. *Id.* at 5. This was the factual question before the jury in *Manzi, supra.*

injuries do not conveniently manifest themselves within the statutory period. At the same time, a plaintiff, once aware that damage has been sustained, may not renew an attack upon the defendant at each stage of a progressing illness.

"In cases concerning *asbestos-induced conditions,* a significant factor contemplated by neither the *Ayers* nor the *Shandle* [sic] courts comes into play—the 'physically objective and ascertainable condition' may not yet be a disease-causing compensable injury at the time it is discovered." (emphasis added) *Manzi, supra* at 599, 587 A.2d at 780.

The court held that since pleural thickening due to asbestos exposure can be present and not cause ill health, it is not compensable as a matter of law in Pennsylvania. However, the plaintiff would not be precluded from future actions against defendant should he develop a separate injury due to the asbestos exposure in the future.

Plaintiff in the instant case avers that just as in *Manzi,* defendant's negligent action did not lead to an immediate compensable injury, but rather only to the non-compensable condition of having a severed vas deferens. Normally the terms damages and injury are interchangeable, since both usually occur at the same instant. But when that is not the case, as plaintiff alleges here, the court distinguishes between the two and requires that both be present before a successful action can be brought. *Rosenthal v. Carson,* 149 Pa. Super. 428, 27 A.2d 499 (1942). Since damages in the form of sterility did not become ascertainable until plaintiff reached puberty in 1986, plaintiff claims that it was only at this time that the required elements for a successful cause of action against defendant existed. Since his cause of action therefore accrued after 42 Pa.C.S. §5533 was

enacted in 1984 to toll the statute for minors, plaintiff concludes that the amended statute applies to his case.

We find it quite evident, however, that the rationale of *Manzi* applies only to asbestos cases. The *Manzi* court clearly emphasizes that its holding is limited to asbestos injuries, and courts subsequently citing *Manzi* follow suit. In *Marinari v. Asbestos Corp., Ltd.,* 417 Pa. Super. 440, 612 A.2d 1021 (1992), the Superior Court held the worker's discovery of non-malignant asbestos related lung pathology did not trigger the statute of limitations with respect to his later action for a separately diagnosed disease of lung cancer. The *Marinari* court recognized that a "separate disease rule" applies in asbestos exposure actions. The court identified the issue in this matter as whether Pennsylvania, *in the context of asbestos actions,* shall be a one disease or two disease state, and addressed the general rules followed by Pennsylvania courts, stating:

"We recognize that in Pennsylvania, courts have generally followed the rule that all claims against a defendant arising from a single transaction or occurrence must be asserted in a single action. (citations omitted) The equation of a single, non divisible action with the transaction or occurrence from which it arises comports with the now established trend toward a transaction based analysis of claims and away from defining a claim in terms of the theory of recovery or the identity of separate harms. (citations omitted) By our decision today we do not denigrate or weaken this analytical approach....

"Fair resolution of claims for *latent asbestos disease* requires that we adopt a more enlightened approach and move 'away from a blind adherence to rigid concepts of what constitutes a cause of action....'

"Therefore, we today join a majority of jurisdictions which have responded to this difficult issue by holding that an *asbestos plaintiff* may assert, in a second lawsuit, a claim for a distinct, separate disease if and when it develops at a later time. (emphasis supplied) *Marinari, supra* at 452-54, 612 A.2d at 1027-28.

The court concluded that "Pennsylvania must join a majority of jurisdictions which have adopted a 'separate disease' rule *in asbestos exposure actions."* (emphasis supplied)

The language of *Manzi* and *Marinari* demonstrates that the change in approach to asbestos litigation was not meant to apply to other causes of action. This conclusion is confirmed by recent Pennsylvania decisions. See *Taliferro v. Johns-Manville Corp.,* 421 Pa. Super. 204, 617 A.2d 796 (1992) (asbestos plaintiff may assert in a second lawsuit a claim for a distinct, separate disease if and when it develops); *Ottavio v. Fibreboard Corp.,* 421 Pa. Super. 284, 617 A.2d 1296 (1992) (rigid adherence to single claim approach has proven unfair and unworkable for both plaintiffs and defendants alike in asbestos actions). These courts have gone to great lengths to continually remind us that the change to a two disease state is in the context of asbestos litigation, while adhering to the merits of the general rule normally applied in negligence actions.

An extension of the separate disease rule beyond the context of asbestos cases would be severely problematic. It would give any personal injury plaintiff a subsequent cause of action for injuries developing years later that were not ascertainable at the time of the original negligent act for which damages were originally sought. Such an

application would allow plaintiffs to bring suit long after an auto accident or other negligence action for additional or new complications arising years after the original conduct occurred. For example, in any slip and fall case plaintiff would be permitted to bring an action for back problems that developed years later and were not ascertainable when suit was originally filed for other injuries. The end result would be to render statutes of limitations useless and moot. We are therefore persuaded that the holding of *Manzi* should not be extended to non-asbestos related injuries.

Moreover, the instant case involves a fact pattern where the negligent act was known, but only the extent of damages at the time of injury was uncertain. The plaintiff here does not have a separate and distinct disease, but rather the normal progression of a condition (severed vas deferens) which was permitted to go untreated for over 12 years. Plaintiff's parents knew of his injury shortly after surgery. The fact that they did not know the extent of his damages is of no consequence. Plaintiff's cause of action accrued at the time of his injury in 1980 and consequently his action is now time barred.

Accordingly, we enter the following:

## ORDER

And now, April 14, 1993, upon consideration of defendant David L. Newcomer, M.D.'s motion for judgment on the pleadings, briefs and oral arguments of the parties with regard thereto, the motion is hereby granted and judgment is entered in favor of defendant and against plaintiff Michael T. Davis and plaintiff's complaint is dismissed.