**Scott Lee RUSTAY, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

**Civ. No. 90–2936 (CSF).**

United States District Court, D. New Jersey.

Oct. 8, 1991.

Cheryl Bukala Kline, Cherry Hill, N.J., Riley and Fanelli, P.C. by Frederick J. Fanelli, Pottsville, Pa., for plaintiff.

Ruprecht & Hart by Thomas C. Hart, Adele C. Baker, Millburn, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

Before this court is a motion for summary judgment as to defendant's liability brought by plaintiff, Scott Lee Rustay ("Rustay"), against defendant, Consolidated Rail Corp. ("Conrail"), and a cross-motion for summary judgment brought by Conrail. For the reasons stated below, both motions for summary judgment are denied.

On April 30, 1988, at about 9:30 P.M., the defendant's train, while traveling through Alpha, New Jersey, at approximately 43 miles per hour, struck the plaintiff, who was lying on the tracks, partially severing his hand. Rustay, a twenty-year-old male, had a blood alcohol concentration of 0.16% at the time of the accident.

At his deposition, Paul Ahner, the Conrail engineer operating the train, testified that the train was approximately 400 to 500 feet away when he observed something that looked like debris or garbage on the track. In Ahner's answers to interrogatories, Ahner explained that these initial estimates of distances were wrong and that he first noticed "what appeared to be a pile of rags, debris or garbage" at a distance of 800 to 900 feet. Notwithstanding this factual differentiation, it is undisputed that Ahner did not immediately apply the brakes or sound the horn. At a distance of somewhere between 150 to 300 feet away, Ahner observed what appeared to be a person and sounded the horn while applying the emergency brake in an attempt to stop the train. The end of the train stopped approximately 900 feet past the point of impact.

The plaintiff has moved for summary judgment as to defendant's liability, and the defendant has cross-moved for summary judgment. Both motions are denied.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Brown v. Hilton,* 492 F.Supp. 771, 774 (D.N.J.1980). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This "burden ... may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

There is no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving party so that a reasonable jury could return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court, however, is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

In order for this court to grant plaintiff's motion for summary judgment as to defendant's liability, plaintiff must prove that Conrail owed a duty to Rustay, Conrail breached that duty, and this breach was the legal and proximate cause of Rustay's injuries. The plaintiff has not carried his burden. Similarly, the defendant urges this court to grant summary judgment in its favor, because it asserts that it owed no

duty to the plaintiff. Because this court holds that under New Jersey law the defendant owed a duty to the plaintiff, the defendant's motion for summary judgment is denied. This court, however, cannot say as a matter of law that defendant breached its duty to the plaintiff. This is precisely the issue to be tried by the finder of fact.

██ It is well settled that in diversity cases a federal court must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Howell v. Celotex Corp.,* 904 F.2d 3, 4 (3d Cir.1990). Both parties argue that because the accident occurred in New Jersey, that state's law will apply. Initially, the plaintiff argues that the defendant owed a duty to Rustay. In New Jersey, the question of whether a duty is owed by a defendant is one of law, to be determined by the court. *Strachan v. John F. Kennedy Mem. Hosp.,* 209 N.J.Super. 300, 315–16, 507 A.2d 718 (App.Div.1986) *aff'd in part and rev'd in part on other grounds, en banc* 109 N.J. 523, 538 A.2d 346 (1988) (citing *Essex Bell v. New Jersey Bell Tel. Co.,* 166 N.J.Super. 124, 127, 399 A.2d 300 (App.Div. 1979); *McKinley v. Slenderella Sys. of Camden N.J. Inc.,* 63 N.J.Super. 571, 581, 165 A.2d 207 (App.Div.1960); *McIntosh v. Milano,* 168 N.J.Super. 466, 495, 403 A.2d 500 (Law Div.1979)). A breach of that duty is a question of fact and must be proven by the plaintiff. *McIntosh,* 168 N.J.Super. at 495, 403 A.2d 500.

██ Duty signifies conformance to a reasonable standard of legal conduct in light of apparent risk. Existence of a duty is a question of law. *McKinley,* 63 N.J.Super. at 581, 165 A.2d 207.

> Duty arises out of a relation between the particular parties that in right reason and essential justice enjoins the protection of the one by the other against what the law by common consent deems an unreasonable risk of harm, such as is reasonably foreseeable, ... in the field of negligence. Duty signifies conformance "to the legal standard of reasonable conduct in the light of the apparent risk." The essential question is whether "the plaintiff's interests are entitled to legal protection against the defendant's conduct." ... Duty is largely grounded in actual responsibilities of social living and human relations, such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct.

*Id.*

██ The issue presented in this case is whether Conrail, the landowner, owed a duty to Scott Rustay, a trespasser. New Jersey has accepted the common-law definition of trespass. "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Hallacker v. National Bank & Trust Co. of Gloucester,* 806 F.2d 488, 490 (3d Cir.1986). Rustay falls within this definition. "Generally, a landowner owes no duty of care towards a trespasser, except to refrain from willfully injurious acts." *Id.* (citing *Renz v. Penn Central Corp.,* 87 N.J. 437, 461, 435 A.2d 540 (1981)). The plaintiff argues that when the landowner is engaged in a highly dangerous activity, like operating a train, the landowner's standard of care must be heightened. Plaintiff's brief, p. 2 (citing Restatement (Second) of Torts § 336 (1965)). It is apparent from the briefs of the parties and a review of the applicable New Jersey case law that the New Jersey Supreme Court has not addressed this issue. Therefore, this court must predict how the New Jersey Supreme Court would decide the issue.

> In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule. To make this prognostication we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide. *See McKenna v. Ortho Pharm. Corp.,* 622 F.2d 657, 662 (3d Cir.1980). The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform our analy-

sis. In addition, we may consult treatises, the Restatement, and the words of scholarly commentators. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981). In evaluating all of the relevant sources, it is this court's conclusion that under New Jersey law Conrail owed a duty to the plaintiff.

The starting point for this analysis is *Renz v. Penn Central Corp.*, 87 N.J. 437, 435 A.2d 540 (1981), a case decided by the New Jersey Supreme Court in 1981. In *Renz*, a minor plaintiff was injured while attempting to cross between the cars of a stationary train. *Id.* at 439, 435 A.2d 540. The railroad based its defense on the Railroad Immunity Act, N.J.S.A. 48:12–152, arguing that the statute precluded recovery by the plaintiff. *Id.* at 440, 435 A.2d 540. The statute provided that persons who were hurt as a result of walking, standing or playing on or along the railroad could not recover for their injuries, because the statute deemed them guilty of contributory negligence. *Id.* (citing N.J.S.A. 48:12–152). The *Renz* court abrogated this result by infusing principles of comparative negligence into the statute. *Id.* at 460, 435 A.2d 540. Because of its treatment of the statute, the *Renz* court declined to address the issue of whether the railroad, as a property owner, is entitled to avail itself of the lower standard of care owed to a trespasser or whether the railroad is a dangerous instrumentality owing a higher duty of care. The *Renz* discussion of this precise issue, in dicta, however, is instructive.

The court began by setting forth the traditional standard of care owed to a trespasser in New Jersey. *Id.* at 461, 435 A.2d 540 ("Traditionally, a landowner owed no duty to a trespasser other than to refrain from an act willfully injurious."). The court continued by explaining that the "doctrine of trespass is not rigid; rather, it is sufficiently flexible to fulfill the purposes of our legal system in serving the needs of present-day society." *Id.* In this regard, the court noted that property owners are subject to a higher standard of care when the property owned by the landowner can be classified as a dangerous instrumentality. *Id.* The majority then examined the Appellate Division opinion issued in *Eden v. Conrail,* 175 N.J.Super. 263, 418 A.2d 278 (App.Div.1980), *modified,* 87 N.J. 467, 435 A.2d 556 (1981) (the companion case to *Renz*).

The *Eden* appellate court stated:

Even as to a trespasser, the old common-law doctrine that an owner of land owed him no duty of care except to refrain from causing injury to such person by willful or wanton conduct has been modified "so as to put the interests of the parties in better balance." *Potter v. Finch & Sons,* 76 N.J. 499, 504 [388 A.2d 614] (1978). Especially with respect to instrumentalities possessing a real potential for grievous bodily harm, the standard of duty is the protection of others against an unreasonable risk of harm. *Imre v. Riegel Paper Corp.*, 24 N.J. 438, 444 [132 A.2d 505] (1957).

*Renz*, 87 N.J. at 461, 435 A.2d 540 (quoting *Eden*, 175 N.J.Super. at 280, 418 A.2d 278).

The *Eden* appellate court's language is instructive because where the state's highest court has not ruled on an issue the "decisions of a state intermediate appellate court are evidence of state law ... and must be given significant weight in the absence of any indication that the highest court would rule otherwise." *General Elec. Credit Corp. v. Ger–Beck Mach. Co.*, 806 F.2d 1207, 1209 (3d Cir.1986).

The plaintiff argues that if the New Jersey Supreme Court were called upon to rule on this case they would not provide Conrail with the lower standard of duty owed to a trespasser, that is, merely a duty to refrain from willfully injurious acts. Instead, plaintiff argues that the New Jersey high court would charge the defendant with a higher standard of care, because operating a train is a highly dangerous activity. This court agrees. The plaintiff cites section 336 of the Restatement (Second) of Torts for the proposition that a landowner who knows or has reason to know of the presence of a trespasser will be liable for any harm caused by the landowner's "failure to carry on his activities

upon the land with reasonable care for the trespasser's safety." Restatement (Second) of Torts § 336 (1965). Comment b to that section states:

> b. *Precautions when Possessor's Activities Highly Dangerous.* If the activity which a possessor of land carries on upon it is one which, even though carelessly conducted, is likely to cause only some harm which, though substantial, is less than death or serious bodily harm, the possessor is not required to exercise care for a trespasser's safety unless he knows of his presence at some point made dangerous by the activity or unless he sees an object or hears a sound which makes him regard the presence of a trespasser as substantially certain or at the least highly probable. On the other hand, the gravity of danger threatened by an activity which, unless carefully carried on, is likely to cause death or serious bodily harm, requires the possessor to exercise reasonable care not only when he knows that a trespasser is at some point made dangerous by it, or is reasonable certain or regards it as highly probable that he is at such a point, but also when he sees an object or hears a sound which causes him to realize that there is a substantial chance that the trespasser may be at such a point. This is in accordance with the tendency of the law not only to require a greater amount of care when life and limb are at stake, than where only some minor harm is likely to occur, but also to extend the duty of protection to persons to whom no duty would be owing if a less serious harm were threatened.

*Id.*
The illustration provided by the Restatement is very similar to the facts of this case. The illustration reads as follows:

> 1. The engineer of the X & Y Railroad Company sees lying upon the track a pile of clothing such as would give a reasonable man cause to suspect that it might contain a human being. Under these circumstances the engineer is not entitled to assume that it is not a human being but is required to keep the engine under control until he is certain that it is not.

Restatement (Second) of Torts § 336 cmt. b, illus. 1 (1965).

This illustration was adopted by the *Eden* appellate court. *Eden*, 175 N.J.Super. at 281, 418 A.2d 278. The *Eden* court explained that "in view of the gravity of the danger the engineer has a duty of care commensurate with the foreseeable risk involved." *Id.*

The defendant argues that the engineer acted reasonably and therefore could not protect Rustay from harm. This, even if true, is a question of fact for the jury. This court merely holds that under New Jersey law a railroad operator owes a duty of care to a trespasser on the tracks because of the inherently dangerous nature of the activity it is engaged in. Therefore, defendant's motion for summary judgment is denied.

■ As previously shown, this court cannot say as a matter of law that the defendant breached this duty of care. This is a question of fact to be determined by the jury. *Huddell v. Levin*, 537 F.2d 726, 734 (3d Cir.1976) (the jury must decide whether the standard of care was breached by the defendant). Therefore, the plaintiff's motion for summary judgment is denied.